UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 17-043-DCR |
| Plaintiff, | ) | and |
| | ) | Criminal Action No. 5: 18-059-DCR |
| v. | ) | |
| | ) | |
| ERIC CHRISTOPHER CONN, | ) | **MEMORANDUM ORDER** |
| | ) | **AND OPINION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Eric Conn has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A). [Record No. 118] Having fully considered the matter, the motion will be denied for the reasons outlined below.

**I.**

From approximately 2004 through 2016, Conn orchestrated one of the largest social security fraud schemes in this country's history.[1] *United States v. Conn*, Lexington Criminal Action No. 5: 17-043-DCR ("Conn I"). The scheme involved the "Disability Insurance Benefits Program," which provides monthly cash benefits to eligible individuals who have previously held gainful employment and paid social security taxes. Typically, applicants for benefits under the program must undergo one or more examinations to determine if they qualify as "disabled." [Conn I, Record No. 101 at p. 6] Medical and mental health professionals would then prepare reports regarding the claimant's conditions for the Social

---

[1] Office of Public Affairs (2018). "Fugitive Lawyer Involved in Largest Social Security Fraud Scheme Sentenced to 15 Years in Prison for His Escape and Related Crimes". Department of Justice. Retrieved 14 Apr 2023.

Security Administration ("SSA"), which would determine if the claimant was entitled to benefits. If a claimant was denied benefits by the SSA, the claimant could request a hearing before an SSA Administrative Law Judge ("ALJ"). [Conn I, Record No. 101 at p. 7] The SSA allows claimants to be represented by attorneys throughout this process. [Conn I, Record No. 101 at p. 8] As a general matter, if a claimant is ultimately awarded benefits, attorneys can be awarded representative's fees of up to twenty-five percent of the total amount of benefits granted to the claimant or the maximum amount allowed by statute. [*Id.*]

Conn maintained a law practice in Stanville, Kentucky, where he specialized in representing individuals applying for benefits with the SSA. [Conn I, Record No. 101 at p. 10] In part, he assisted clients with the initial application process up through administrative hearings before an ALJ if necessary. [*Id.*] Beginning around 2004, Conn developed relationships with Dr. Alfred Bradley Adkins and ALJ David B. Daugherty. [Conn I, Record No. 101 at p. 13] Working together, these individuals (perhaps better referenced as co-conspirators) developed a scheme where Conn's clients presented to Dr. Adkins, who would prepare evaluations of the claimants stating that he or she was entitled to benefits. They also would falsify claimant records as necessary to show that a condition was more serious than it was in reality. [Conn I, Record No. 101 at p. 9-13] If the SSA denied the claim, ALJ Daugherty would approve the claim without appropriate review in exchange for payment from Conn. [*Id.*]

From 2005 to May 2011, Conn submitted thousands of falsified medical and other records to the SSA and ALJ Daugtherty issued over 1,700 favorable decisions to Conn's clients. [Conn I, Record No. 101 at p. 15] These actions, as well as those by other ALJ's who based their decisions on fraudulent documents, led the SSA to paying over $550,000,000 in benefits and causing the SSA to pay $46,549,193.01 in benefits that the SSA previously had

determined claimants were not entitled to receive. [*Id.*] As a result of this scheme, Conn collected exorbitant fees for his work. [*Id.*]

In 2011, the Wall Street Journal published an article critical of ALJ Daugherty's practices, noting his abnormally high approval rate of disability claims and close relationship with Conn. [*Id.*] Shortly thereafter, Conn was contacted by federal law enforcement which put Conn on notice of a federal investigation regarding his actions. [Conn I, Record No. 101 at p. 16] Conn then obstructed justice by destroying computer hard drives and records of his illegal practices, while also trying to blackmail federal employees who were assisting with the investigation into his corrupt practices. [*Id.*]

A Grand Jury indicted Conn on April 1, 2016. He entered plea agreement with the government in March 2017 in which he pled guilty to a two-count information charging him with theft of government money in violation of 18 U.S.C. § 641 and paying illegal gratuities in violation of 18 U.S.C. § 201(C)(1)(A). [Conn I, Record No. 4] After entering a guilty plea on March 24, 2017, sentencing was scheduled for July 14, 2017. [Conn I, Record No. 9]

Conn was released prior to his sentencing hearing, subject to conditions which included GPS electronic monitoring. [Conn I, Record No. 6] However, on June 2, 2017, and shortly before he was scheduled to testify against a co-defendant, Conn removed his electronic monitoring device and fled the United States. *United States v. Eric Christopher Conn and Curtis Lee Wyatt*, Lexington Criminal Action No. 5:17-104-DCR ("Conn II"). He was eventually located in Honduras and returned to the United States in December 2017. [Conn II, Record No. 7-1 at p. 22] Inasmuch as Conn had left the country in violation of his conditions of release, he was not present at his July 14, 2017, sentencing hearing. [Conn I, Record No. 26] Nevertheless, the Court proceeded with the hearing pursuant to Rule 43(c)(1)(B) of the

Federal Rules of Criminal Procedure. The Court sentenced Conn to 120 months of imprisonment on Count 1 and 24 months of imprisonment on Count 2, to be served concurrently, for a total term of 144 months. The Court also found Conn owed $106,942,515.45 in restitution. [Conn I, Record No. 29 at p. 42] However, given the defendant's failure to appear, the Court did not dismiss the original indictment.

Conn again was indicted by a federal grand jury on September 6, 2017, on four counts related to his conspiracy to escape justice and his failure to appear at sentencing. [Conn II, Record No. 1] He ultimately pled guilty to a three-count information charging conspiracy to defraud the United States, conspiracy to escape, and conspiracy to retaliate against a witness, victim or informant, with each count carrying a five-year sentence. [Conn I, Record No. 119] The Court later sentenced Conn to fifteen years imprisonment, to run consecutively to the twelve-year sentence imposed for his conviction in the first case. [Conn I, Record No. 119]

## II.

As the undersigned has recognized on numerous occasions, as a general matter, "[o]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). However, compassionate release is an exception to this rule. *United States v. McCall*, 56 F.4th 1048, 1056 (6th Cir. 2022). The decision to reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) provides that the discretion to reduce a sentence belongs entirely to the district court, and district courts must "supply specific factual reasons for their compassionate release decisions." *United States v. Jones*, 980 F.3d 1098, 1101-02 (6th Cir. 2020). Before a defendant may properly petition a district court for compassionate release, the

individual must first demonstrate exhaustion of administrative remedies within the BOP. 18 U.S.C. § 3582(c)(1)(A).

After ensuring exhaustion, district courts conduct a "three-step inquiry." *Jones*, 980 F.3d at 1101. First, the movant must show that "extraordinary and compelling reasons warrant the [sentence] reduction." *McCall*, 56 F.4th at 1054. Second, the Court must confirm that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Finally, the movant must establish that the reduction is warranted considering the relevant § 3553(a) factors." *Id.* The moving party has the burden to prove that he is entitled to a sentence reduction. *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020). The court will deny a motion for a sentence reduction "if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction." *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022).

**A.**

The Sentencing Commission's recent amendments to the compassionate release policy statement list six categories of extraordinary and compelling reasons that may support modifying a defendant's sentence. U.S.S.G. § 1B1.13(b).[2] Conn claims he is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility, and that this amounts to an extraordinary

---

[2] In *McCall*, *supra*, the United States Court of Appeals for the Sixth Circuit held that nonretroactive legal developments, considered alone or with other factors, could amount to an "extraordinary and compelling" reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Recently, the Sixth Circuit determined in three consolidated cases that U.S.S.G. 1B1.13(b)(6) is invalid because the United States Sentencing Commission may not overrule *McCall* by promulgating contrary policy statements permitting sentencing reductions for prisoners based on nonretroactive changes in the law. *See United States v. Bricker, United States v. McHenry* and *United States v. Orta*, 2025 WL 1166016 at *7 (6th Cir. Apr. 22, 2025).

and compelling circumstance under § 1B1.13(b)(1)(B). [Record No. 118] He further contends that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and that puts him at risk for "serious deterioration in health or death," which is an extraordinary and compelling circumstance as defined under § 1B1.13(b)(1)(C).

Specifically, Conn alleges that he is experiencing conditions reminiscent of "Gulf War Syndrome," which he claims he first experienced during his second tour of duty during the Gulf War, and that doctors told him his experience was common for soldiers serving at that time. [Record No. 118-1] His symptoms include "osteoporosis, joint pains, autoimmune disorder, sleep disturbances, anemia, musculoskeletal pain, skin rashes, arthritis, hypothyroidism, diabetes, fatigue, hypertension, hyperlipidemia, enlarged prostate gland, and obsessive compulsory disorder." [Conn I, Record No. 118-1] Conn contends that these symptoms make his daily activities "problematic" and that "months at a time have passed waiting for [his] prescribed medications." [Conn I, Record No. 118-1] If released, Conn hopes to receive care for these "Gulf War-related conditions" at Walter Reed Army Hospital, the premier facility for conditions related to the Gulf War.

However, the undersigned concludes that Conn's asserted medical conditions do not amount to an "extraordinary and compelling" circumstance justifying a reduced sentence. A defendant can only show that medical conditions constitute an extraordinary and compelling circumstance when his "incarcerated status renders the condition unmanageable, and the prospects of recovery are low." *United States v. Watts*, Crim. Action No. 6:14-004-DCR, 2020 WL 6937442, *2 (E.D. Ky. Nov. 24, 2020). Here, the extensive medical records provided show that the BOP has thoroughly treated him and continues to do so. His principal complaint

is that he has been delayed in receiving certain medications and that the BOP is not as well equipped to treat this condition as well as Walter Reed Army Hospital. Conn provides an extensive series of medical records in support of his motion, but these records do not demonstrate that his care has been inadequate. [Conn I, Record No 118] Simply put, there is no basis in the medical documentation Conn provides to infer that he is not receiving adequate care such that his health is in serious jeopardy.

Although Conn may face medical challenges, the challenges are not unmanageable and his prospects of recovery are not sufficient to demonstrate an "extraordinary and compelling" circumstance. He can perform daily tasks, and records show that he does not need assisted living. [Conn I, Record No. 118-2 at p. 4] Conn contends that he should not have to settle for what would be described as "adequate care" but should be entitled to receive "the best possible care" which he contends he can only receive through Walter Reed Medical Center's telehealth program. [Conn I, Record No. 120 at p. 12-13] He further argues that, as a veteran, the United States has the "responsibility" to make him whole." [Conn I, Record No. 120 at p. 11-12] But again, Conn's medical condition is not "extraordinary and compelling." He has neither shown that his condition is unmanageable nor that his prospects of recovery are low.

**B.**

Because Conn has failed to demonstrate the existence of extraordinary and compelling circumstances, the Court need not need to weigh the § 3553(a) factors. However, even if Conn had identified such reasons necessary to support a reduced sentence, such relief would not be warranted after full consideration of the relevant 18 U.S.C. § 3553(a) sentencing factors.

Regarding incarceration, Conn's sentences were statutorily capped at 144 months and 180 months, respectively. After balancing the relevant § 3553(a) factors, the Court found the

severity of the offense necessitated sentences at the statutory maximum terms and ran them consecutively.  Given the severity of Conn's crimes, reducing his sentences, when he has served just over a quarter of the time imposed, would unduly diminish the severity of his offenses.[3]

To state the obvious, Conn's crimes are extremely serious.  Conn was a practicing attorney and held himself out to be a trustworthy community leader.  While thoroughly abusing this position of trust, he orchestrated a scheme that led to over 1,700 fraudulent decisions by the SSA and defrauded the SSA of over $550,000,000 in disability benefits.  This scheme harmed the American taxpayer in at least this amount and severely undermined the public's trust in the legal profession, government, and justice system in ways that can neither be quantified nor easily repaired.  And to pour gasoline on the fire, he attempted to sabotage the criminal investigations and then sought to evade justice by fleeing the country.

During the sentencing hearings, the Court considered the need to impose a sentence that reflected the seriousness of the offense and to promote respect for the rule of law.  Conn's crimes and attempts to evade justice demonstrated a total lack of respect for the rule of law.  Through his conduct of corruptly bribing and illegally influencing decisions of administrative law judges, interfering with and trying to undermine criminal investigations, and fleeing from the United States to a foreign country, Conn's actions have demonstrated complete contempt

---

[3]   Conn correctly notes that the Sixth Circuit has cautioned against using presumptions about the percentage of a sentence served and whether that should impact a court's weighing of the § 3553(a) factors, given the individual nature of sentencing.  *United States v. Bailey*, 2021 U.S. App. LEXIS 24771, at *5-9 (6th Cir. August 17, 2021).  While his assertion is generally true, when considering Conn's offenses, it becomes clear that releasing him when he has only served a portion of the total term of incarceration imposed would violate the goals of 18 U.S.C. § 3553(a).

for the justice system. Given the harm his actions caused, a twenty-seven-year sentence was (and remains) appropriate. Releasing the defendant at this time (or even reducing his term of incarceration even modestly) would be antithetical to promoting respect for the rule of law.

In summary, the Court remains convinced that the original sentences imposed are minimally sufficient, but certainly not greater than necessary to reflect the seriousness of Conn's crimes. The sentences further amount to just punishment while they provide general and specific deterrence to future potential criminal conduct.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Eric Conn's motion for compassionate release [Record No. 118] is **DENIED**.

Dated: April 25, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky